

FILED

Feb 18 2020, 6:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen B. Caplin
Professional Corporation
Indianapolis, Indiana

Sharon R. Merriman
Voyles Vaiana Lukemeyer Baldwin &
Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Marilyn A. Young
Erin E. Meyers
Zeigler Cohen & Koch
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert L. Williams, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Gavin H. Inglis, M.D., and St. Vincent Hospital and Health Center, <br> *Appellee-Defendant.* | February 18, 2020 <br><br> Court of Appeals Case No. 19A-CT-1438 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable John M.T. Chavis, II, Judge <br><br> Trial Court Cause No. 49D05-1409-CT-30452 |

**Pyle, Judge.**

## Statement of the Case

[1]  Robert L. Williams ("Williams") appeals the trial court's denial of his motion to amend his complaint and the trial court's grant of partial summary judgment

to St. Vincent Hospital and Health Care Center ("the Hospital") on Williams'
medical malpractice claim. Concluding that the trial court did not err, we
affirm the trial court's rulings.

We affirm.

# Issues

1. Whether the trial court abused its discretion by denying
Williams' motion to amend his complaint to add a federal claim.

2. Whether the trial court erred by granting partial summary
judgment to the Hospital on Williams' medical malpractice claim
against the Hospital.

# Facts

In November 2012, forty-three-year-old Williams experienced some pain in his
lower back and in his left buttock and leg. On November 26 and 28, 2012,
Williams sought treatment with a chiropractor.

Williams' pain progressed, and on December 2, 2012, he went to the emergency
department at the Hospital. Williams checked in at the front desk and gave
them his insurance information. After Williams was taken back to a room, a
nurse checked his vitals. Dr. Gavin Inglis ("Dr. Inglis") then examined
Williams. Williams told Dr. Inglis that he had pain in his back that was
radiating into his buttocks and down both legs, as well as numbness in his
groin, genitals, and perianal area. Williams told Dr. Inglis that he had had this
condition for over one week. Additionally, Williams informed Dr. Inglis that

he could not always feel when he needed to urinate but that he had not had any bladder or bowel incontinence or accidents. Dr. Inglis physically examined Williams, including palpating Williams' spine, bilateral glutes, hamstrings, legs, and feet. Dr. Inglis also checked Williams' reflexes. Dr. Inglis' exam revealed that Williams had pain and tenderness in his glutes and hamstrings and decreased sensation in his scrotum. Dr. Inglis ordered an MRI for Williams, and the MRI revealed that Williams had a herniated disc at L4-L5 and central spinal stenosis. Dr. Inglis discussed the MRI results with Williams and diagnosed Williams with having a central disc extrusion with central spinal stenosis and muscle strain. Dr. Inglis discharged Williams from the Hospital that same day with instructions to follow up with orthopedic surgeon, Dr. James Hardacker ("Dr. Hardacker"), within two to three days, and he provided Williams with Dr. Hardacker's phone number. Dr. Inglis prescribed steroids, pain medication, and muscle relaxants to Williams and instructed him to return to the emergency department if his symptoms worsened.

[5] A few days later, on December 6, 2012, Williams returned to the emergency department at the Hospital and was again physically examined by Dr. Inglis. At that time, Williams had decreased pain in his hamstrings but continued pain and numbness in his scrotum and anus. Dr. Inglis ordered a bladder scan for Williams, and the test revealed no bladder issue. Dr. Inglis then arranged for Williams to have a neurosurgical consult with Dr. James Miller ("Dr. Miller"). Williams was admitted to the Hospital, and the following day, Dr. Miller

operated on Williams and performed an L4-L5 laminectomy and discectomy. Williams was discharged from the Hospital on December 14, 2012.

[6] In April 2014, Williams filed a proposed complaint, pursuant to the Indiana Medical Malpractice Act, with the Indiana Department of Insurance ("IDOI"). He filed the complaint against Dr. Inglis, the Hospital, and St. Vincent Emergency Physicians ("the Emergency Physicians"), and he alleged that these health care providers had committed medical malpractice on December 2, 2012. Williams' main complaint was that Dr. Inglis had not obtained a neurosurgical consult prior to discharging Williams on December 2, 2012. The IDOI then appointed a medical review panel.

[7] On September 12, 2014, Williams filed a complaint in the trial court ("trial court complaint"). He filed this complaint against Dr. Inglis, the Hospital, and the Emergency Physicians (collectively, "the defendants") and alleged medical malpractice. The names of the defendants were initially anonymous pursuant to INDIANA CODE § 34-18-8-7. In his initial trial court complaint, Williams alleged that these defendants were "negligent in providing health care" to him and that their "acts and/or failures to act were malpractice in connection with providing [him] health care." (App. Vol. 2 at 31). He further alleged that he had been injured "[a]s a direct and proximate result of the acts of negligence and malpractice" of the defendants. (App. Vol. 2 at 31). The complaint also alleged that Dr. Inglis was an agent or employee of the Hospital and the Emergency Physicians.

[8] On November 1, 2017, the medical review panel issued a unanimous opinion, finding that the evidence did "not support the conclusion that the Defendants [had] failed to meet the standard of care" and that "the conduct complained of was not a factor of [Williams'] resultant damages." (App. Vol. 2 at 117).

[9] On December 18, 2017, Williams filed a motion to amend his trial court complaint. Specifically, he sought to amend the complaint so that he could: (1) identify the anonymous defendants by name (pursuant to INDIANA CODE § 34-18-8-7) ; and (2) add an additional count alleging a federal claim under the Emergency Medical Treatment and Active Labor Act ("EMTALA").[1] In his proposed amended complaint, Williams set forth two counts: (1) "Medical Malpractice[;]" and (2) "Violation of EMTALA[.]" (App. Vol. 2 at 44, 46) (modified from upper case). In his medical malpractice count, he alleged, as he had in his original trial court complaint, that the defendants were "negligent in providing health care" to him on December 2, 2012 and that their "acts and/or failures to act were malpractice in connection with providing [him] health care." (App. Vol. 2 at 45-46 ). He also again alleged that he had been injured "[a]s a direct and proximate result of the acts of negligence and malpractice" of the defendants. (App. Vol. 2 at 46). In his EMTALA count, Williams alleged that the defendants had violated EMTALA on December 2, 2012 because they had "failed to stabilize[] [his] condition before he [had been]

---

[1] EMTALA is codified at 42 U.S.C. § 1395dd.

transferred/discharged" from the Hospital's emergency room. (App. Vol. 2 at 47).

[10] The Hospital filed an objection to Williams' request to add an EMTALA count to the complaint. Specifically, the Hospital asserted that the two-year statute of limitations for Williams' federal EMTALA claim had passed and could not be tolled for any reason, including waiting for an opinion from the medical review panel. In support of its argument, the Hospital cited to *HCA Health Servs. of Indiana, Inc. v. Gregory*, 596 N.E.2d 974, 976 (Ind. Ct. App. 1992), *trans. denied*. In *HCA Health Servs.*, our Court analyzed the interaction between EMTALA and Indiana's Medical Malpractice Act ("the State Medical Malpractice Act") when determining whether a plaintiff was barred from filing an EMTALA claim because she had not filed it within the two-year statute of limitations. Our Court held that EMTALA preempted the State Medical Malpractice Act and that the plaintiff could "not shield her non-compliance with EMTALA's procedural mandates by asserting compliance with the State [Medical Malpractice] Act" nor "use the State [Medical Malpractice] Act to foil EMTALA's statute of limitations." *HCA Health Servs.*, 596 N.E.2d at 978.

[11] Thereafter, Williams filed a response to the Hospital's objection and argued that he had "protected his [EMTALA] claim from a statute of limitations defense" when he filed his proposed medical malpractice complaint with the IDOI in April 2014 and his trial court complaint in September 2014. (App. Vol. 2 at 63). He also argued that provisions in the State Medical Malpractice Act prohibited him from including an EMTALA claim in his trial court complaint

until after the statute of limitations had already passed. Additionally, he asserted that the EMTALA count that he sought to add to his original trial court complaint was not time barred because Indiana Trial Rule 15(C) would allow the claim to relate back to the original trial court complaint.

[12] On February 16, 2018, the trial court issued an order in which it granted Williams' request to identify the defendants by name and denied his request to add the EMTALA count to the trial court complaint. Williams then filed an amended complaint identifying the defendants, which included Dr. Inglis, Emergency Physicians, and the Hospital. Again, Williams alleged that Dr. Inglis was an agent or employee of the Hospital and the Emergency Physicians.

[13] On October 15, 2018, the Hospital filed a motion for summary judgment, asserting that there was no genuine issue of fact regarding Williams' medical malpractice claim against the Hospital. As part of its designated evidence, it attached the medical review panel's unanimous opinion.

[14] Thereafter, Williams filed a response to the Hospital's summary judgment motion, arguing that the Hospital was not entitled to summary judgment because there were material issues of fact regarding whether: (1) Dr. Inglis had breached the standard of care; (2) Dr. Inglis' breach of the standard of care caused Williams' damages; (3) Dr. Inglis was an agent or employee of the Hospital when he provided health care to Williams; and (4) the Hospital was negligent per se based on a violation of the statutory law of EMTALA.

[15] Williams designated an affidavit from Dr. CT Fletcher ("Dr. Fletcher"), who was an emergency room physician. Dr. Fletcher's affidavit opined that "the standard of care required that Dr. Inglis, prior to discharging [Williams] from the Hospital on December []2, 2012, obtain a neurosurgical evaluation of [Williams]" and that Dr. Inglis' failure to request a neurosurgical evaluation was below the standard of care. (App. Vol. 3 at 44). Dr. Fletcher also opined that Dr. Inglis' "deviation in the standard of care was a cause of [Williams'] condition[.]" (App. Vol. 3 at 44). Williams also designated evidence, including Dr. Inglis's deposition and the Hospital's bylaws, in support of his assertion that Dr. Inglis was an employee or agent of the Hospital.

[16] The Hospital then filed a reply to Williams' response. To rebut Williams' respondeat superior claim, the Hospital designated a consent form that Williams had signed at the Hospital on December 2, 2012. The consent form contained a section that informed the patient that "many of the physicians" who provided services at the Hospital, including "emergency department physicians[,]" were "independent contractors[,]" were "not agents or employees of the Hospital[,]" and were "not subject to the control and supervision of the Hospital." (App. Vol. 4 at 72) (bold and underlined emphases removed). Williams initialed that he had read and understood the section.[2]

---

[2] The section in the consent form provided as follows:

**INDEPENDENT PHYSICIANS AND OTHER PROVIDERS**

**READ CAREFULLY**:

**I recognize that many of the physicians who provide services to me at Hospital are independent contractors and are not agents or employees of the Hospital. This includes**

[17] Following a summary judgment hearing, the trial court issued an order, granting summary judgment to the Hospital on Williams' medical malpractice claim and denying summary judgment to the Hospital on Williams' respondeat superior claim. The trial court's order provided, in relevant part:

> 1.      [Williams] did not include an opinion of a medical expert to rebut the opinion of the Medical Review Panel with respect to any negligent conduct on the part of [the Hospital]. Therefore, the Court **GRANTS** [the Hospital's] Motion for Summary Judgment on the issue of whether it or its employees were negligent and caused [Williams'] injuries.
>
> 2.      [Williams'] expert affidavit only addresses care that Dr. Inglis provided to [Williams]. Therefore, the Court **GRANTS** [the Hospital's] Motion for Summary Judgment as to all medical care provided to [Williams] by any other healthcare provider, whether an employee or agent of [the Hospital].
>
> 3.      On February 16, 2018, the Court denied [Williams'] motion to Amend the Complaint to add a federal claim under the Emergency Treatment and Labor Act (EMTALA), 42 U.S.C. 1395dd. There is no EMTALA claim contained in [Williams'] Amended Complaint. The Court is unclear why this issue was raised in [Williams'] Response Brief. Nevertheless, [Williams'] argument regarding EMTALA and his claim for negligence *per se* is **MOOT** as there is no such claim for the Court to consider.

---

**but is not limited to: emergency department physicians and physician assistants, the anesthesiologists, the radiologists, the pathologists, and the physicians who are on-call to the emergency department to render specialty services. I understand and agree that each of the above referenced physicians is <u>not subject to the control and supervision of the Hospital</u>. Should I have any questions regarding the relationship between the physician providing services to me and the Hospital, I have the right to ask further questions.**

**I have read and understand this paragraph          Initials _____**

(App. Vol. 4 at 72) (bold and underline emphases included in original). Williams initialed this section.

* * * * *

5.      The Court finds that there is a genuine issue of material fact to be decided by the trier of fact as to whether Dr. Inglis was an apparent, ostensible, or actual agent of [the Hospital] when Dr. Inglis provided health care to [Williams]. The dispute centers around the ambiguity of the informed consent entitled "Independent Physicians and Other Providers" that [Williams] signed acknowledging his understanding and agreement that "many" physicians are independent contractors and not subject to control and supervision of [the Hospital]. *See*, St. Vincent's Reply to Plaintiff's Response to St. Vincent's Motion for Summary Judgment. There exist conflicting inferences as to whether, by signing the Independent Physicians and Other Providers informed consent, [Williams] acknowledged his understanding and agreement that Dr. Inglis was not an employee of [the Hospital]. Therefore, the Court **DENIES** [the Hospital's] Motion for Summary Judgment on the issue of *respondeat superior*. Whether [the Hospital] is vicariously liable for Dr. Inglis' alleged medical negligence will be an issue determined by the trier of fact.

(App. Vol. 2 at 24-26).[3] The trial court later made its order a final judgment for purposes of appeal. Williams now appeals.

---

[3] The trial court also granted summary judgment to the Emergency Physicians, "precluding any claims [Williams] may attempt to pursue against St. Vincent Emergency Physicians as an entity or as a result of alleged negligence by any other employee or agent of St. Vincent Emergency Physicians." (App. Vol. 2 at 25). Williams does not raise an appellate challenge to the trial court's grant of summary judgment to the Emergency Physicians.

# Decision

Williams argues that the trial court erred by: (1) denying his motion to amend his complaint; and (2) granting partial summary judgment to the Hospital. We will review each argument in turn.

## 1. Motion to Amend Complaint

Williams argues that the trial court abused its discretion by denying his motion to amend his complaint to add an EMTALA claim. Before we analyze the trial court's ruling on Williams' motion to amend his complaint, we first briefly review the history and nature of an EMTALA claim.

"EMTALA was enacted to address the problem of patient 'dumping,' in which hospitals would not provide the same treatment to uninsured patients as to paying patients, either by refusing care to the uninsured patients or by transferring them to other facilities." *Beller v. Health & Hosp. Corp. of Marion Cty., Indiana*, 703 F.3d 388, 390 (7th Cir. 2012). "EMTALA imposes two duties on hospitals with respect to patients who come to their emergency rooms: first, to provide medical screening for any emergency condition; and second, as to any emergency condition, to stabilize the patient prior to any transfer to another facility." *Id.* (citing 42 U.S.C. § 1395dd). *See also HCA Health Servs.*, 596 N.E.2d at 976 (explaining that "EMTALA operates to restrict, among other things, the transfer, or 'dumping,' of patients from hospitals until their conditions have stabilized").

"EMTALA created a federal cause of action under federal law, governed exclusively by the federal act, but that may be pursued in federal or state fora." *Id.* at 977. "This choice of forum in which to pursue an EMTALA claim, however, does not indicate that all state procedural requirements are encompassed when maintaining an action based on the federal statute." *Id.* The statute of limitations for an EMTALA claim is two years from the date of the alleged EMTALA violation. *See* 42 U.S.C. § 1395dd(d)(2)(C) (providing that "[n]o action may be brought under this paragraph more than two years after the date of the violation with respect to which the action is brought"). The EMTALA statute also provides that "[t]he provisions of [EMTALA] do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section." 42 U.S.C. § 1395dd(f).

We now turn back to our review of the trial court's ruling on Williams' motion to amend his complaint to add an EMTALA claim. "Indiana Trial Rule 15(A) provides that '[a] party may amend his pleading once as a matter of course' if within a certain time frame." *Hilliard v. Jacobs*, 927 N.E.2d 393, 398 (Ind. Ct. App. 2010), *trans. denied*. "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." Ind. Trial Rule 15(A). "Although amendments to pleadings are to be liberally allowed, the trial court retains broad discretion in granting or denying amendments to pleadings." *Hilliard*, 927 N.E.2d at 398. We will reverse a trial court's ruling on a motion to amend

only upon a showing of an abuse of that discretion, which occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* Our Court reviews whether a trial court's ruling on a motion to amend is an abuse of discretion by evaluating a number of factors, including "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment." *Id.* (internal quotation marks and citation omitted).

[23] In reviewing these factors, we find one of them to be dispositive – futility of the amendment. Specifically, as the Hospital argued to the trial court below, the two-year statute of limitations for the EMTALA claim had already passed by the time Williams sought to amend his trial court complaint, making an amendment to add an EMTALA claim futile.

[24] Here, Williams contends that the Hospital violated EMTALA on December 2, 2012. He filed his initial trial court complaint on September 12, 2014. He did not allege a violation of EMTALA in this initial complaint. Williams sought to amend his complaint to add an EMTALA claim on December 18, 2017, which was five years after the date that he alleges the Hospital had violated EMTALA.

[25] Williams recognizes that his motion to amend his complaint was filed more than two years after the date that he alleges the Hospital violated EMTALA.

Williams, however, suggests that the EMTALA was tolled because the State Medical Malpractice Act "prohibited" him from filing an EMTALA claim until after the medical review panel had rendered an opinion on his medical malpractice complaint before the IDOI. (Williams' Reply Br. 21) (citing I.C. § 34-18-8-7). We reject Williams' argument for two reasons. First, an argument raised for the first time in a reply brief is waived. *See Crossmann Communities, Inc. v. Dean*, 767 N.E.2d 1035, 1044 (Ind. Ct. App. 2002). Second, waiver notwithstanding, we have explained that "there is no provision in EMTALA which effectively tolls the statute of limitations while awaiting a state procedural prerequisite, such as an opinion from a medical review panel, as is contained in the State [Medical Malpractice] Act." *HCA Health Servs.*, 596 N.E.2d at 977.

[26] Additionally, Williams argues against the application of the EMTALA two-year statute of limitations by engaging in some procedural gymnastics. Specifically, he contends that his federal EMTALA claim was not a new, separate claim that he sought to add to his complaint. Instead, he contends that the EMTALA claim was merely an expansion of his malpractice and negligence claim in his original complaint filed in September 2014. Williams asserts that the proposed EMTALA claim would fall under the state statute of limitations for negligence, which is also two years, and that this claim would then be allowed to be added to his original complaint pursuant to Indiana Trial

Rule 15(C). [4] Recognizing the conflict between Indiana Trial Rule 15(C) and EMTALA's statute of limitations, he argues that Trial Rule 15(C) would "prevail" and render EMTALA's statute of limitations a "nullity." (Williams' Br. 23). Williams contends that the trial court should have therefore allowed him to forego the EMTALA statute of limitations and include the alleged EMTALA claim in his original complaint.

[27] We conclude that Williams' arguments have not stuck the desired procedural landing. Here, Williams sought to add an EMTALA claim to his original complaint. As such, it was a "federal cause of action under federal law" and "governed exclusively by the federal act[.]" *HCA Health Servs.*, 596 N.E.2d at 977. The fact that an EMTALA claim may be brought in state court, "does not indicate that all state procedural requirements are encompassed when maintaining an action based on the federal statute." *Id.* We acknowledge that "[i]t is a fundamental rule of law in Indiana that in the event of a conflict between a procedural statute and a procedural rule adopted by the supreme court, the latter shall take precedence." *Bowyer v. Indiana Dep't of Nat. Res.*, 798 N.E.2d 912, 916 (Ind. Ct. App. 2003) (internal quotation marks and citation omitted). *See also Ritchie v. State*, 809 N.E.2d 258, 268 (Ind. 2004) ("In general, if a statute conflicts with a validly adopted Trial Rule, the rule prevails."), *reh'g denied*, *cert. denied*. However, the federal EMTALA regulation at issue includes

---

[4] Trial Rule 15(C) provides, in relevant part, that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

an express provision regarding preemption, which provides that "[t]he provisions of [EMTALA] do not preempt any State or local law requirement, *except to the extent that the requirement directly conflicts with a requirement of this section*." 42 U.S.C. § 1395dd(f) (emphasis added). *See also Kennedy Tank & Mfg. Co. v. Emmert Indus. Corp.*, 67 N.E.3d 1025, 1028 (Ind. 2017) (explaining that "[e]xpress preemption exists when Congress states the statute's preemptive effect"). The EMTALA statute of limitations, 42 U.S.C. § 1395dd(d)(2)(C), provides that "*[n]o action* may be brought under this paragraph *more than two years after the date of the violation* with respect to which the action is brought." (Emphasis added). Because the application of Indiana Trial Rule 15(C) would directly conflict with the EMTALA two-year statute of limitations, it is therefore preempted by EMTALA.

[28] Here, Williams attempted to file an EMTALA claim on December 18, 2017, which was more than two years after the date of the alleged violation of EMTALA on December 2, 2012. Thus, Williams' EMTALA claim was barred by EMTALA's two-year statute of limitations. Because his proposed amendment to add this claim would have been futile, we conclude that the trial court did not abuse its discretion by denying Williams' motion to amend his complaint.[5]

## 2. Summary Judgment

---

[5] The parties also address the definitions contained within the provisions of EMTALA to argue whether EMTALA is applicable to the facts of this case. Given our determination that Williams' EMTALA claim was barred by the applicable statute of limitations, we need not address these other arguments.

[29] Next, we turn to Williams' argument that the trial court erred by granting partial summary judgment to the Hospital.

[30] Our standard of review for summary judgment cases is well-settled. When we review a trial court's grant of a motion for summary judgment, our standard of review is the same as it is for the trial court. *Knighten v. E. Chi. Hous. Auth.,* 45 N.E.3d 788, 791 (Ind. 2015). Summary judgment is appropriate only where the moving party has shown that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). "Indiana's distinctive summary judgment standard imposes a heavy factual burden on the movant to demonstrate the absence of any genuine issue of material fact on at least one element of the [non-movant's] claim." *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016) (citing *Hughley,* 15 N.E.3d at 1003). Only after the moving party carries its burden is the non-moving party then required to present evidence establishing the existence of a genuine issue of material fact. *Knighten*, 45 N.E.3d at 791. When deciding whether summary judgment is proper, we consider only the evidence the parties specifically designated to the trial court. *Siner*, 51 N.E.3d at 1188 (citing Ind. Trial Rule 56(C)).

[31] Here, the trial court granted partial summary judgment to the Hospital on Williams' medical malpractice claim. In regard to this claim, the trial court concluded as follows:

> 1.     [Williams] did not include an opinion of a medical expert to rebut the opinion of the Medical Review Panel with respect to

any negligent conduct on the part of [the Hospital]. Therefore, the Court **GRANTS** [the Hospital's] Motion for Summary Judgment on the issue of whether it or its employees were negligent and caused [Williams'] injuries.

2. [Williams'] expert affidavit only addresses care that Dr. Inglis provided to [Williams]. Therefore, the Court **GRANTS** [the Hospital's] Motion for Summary Judgment as to all medical care provided to [Williams] by any other healthcare provider, whether an employee or agent of [the Hospital].

(App. Vol. 2 at 24-25).

[32] On appeal, Williams does not challenge this summary judgment ruling. Instead, he contends that there were "material questions of fact as to whether there was a violation of EMTALA[,]" that the violation of EMTALA constituted negligence per se, and that the Hospital did not designate evidence to rebut the EMTALA claim. (Williams' Br. 14). However, as the trial court explained, "There is no EMTALA claim contained in [Williams'] Amended Complaint" and any "argument regarding EMTALA and his claim for negligence *per se* is **MOOT** as there is no such claim for the Court to consider." (App. Vol. 2 at 25). Accordingly, we will not address this argument on appeal.

[33] Affirmed.

Robb, J., and Mathias, J., concur.